Exhibit AN3145 - Page 1 of 22

141-295012-17

FILED
TARRANT COUNTY
1/17/2019 10:51 AM
THOMAS A. WILDER
DISTRICT CLERK

**Cause No. 141-295012-17**

| | | |
|---|---|---|
| MBH REAL ESTATE LLC, | § | IN THE DISTRICT COURT |
| AFI LOAN SERVICING, LLC, | § | |
| ANSON FINANCIAL, INC., | § | |
| J. MICHAEL FERGUSON, P.C. | § | |
|   Plaintiffs | § | |
| | § | |
| V. | § | 141st JUDICIAL DISTRICT |
| | § | |
| IAN GHRIST, GHRIST LAW FIRM, PLLC, | § | |
| SHAWN COKER, NEIGHBORHOOD PARTNER, | § | |
| INC., BLUE MOON REALTY GROUP, LLC, | § | |
| WIZARD FUNDING, LLC, SILVER STAR TITLE | § | |
| , LLC DBA SENDERA TITLE, ELIZABETH | § | |
| ESPINO, KATHY E. MONTES, AND LUCY | § | |
| OLIVAS | § | |
|   Defendants | § | TARRANT COUNTY, TEXAS |

**FIRST AMENDED MOTION FOR TRADITIONAL SUMMARY JUDGMENT ON *RES JUDICATA* AND COLLATERAL ESTOPPEL**

**AND**

**MOTION TO DISMISS CLAIMS PURSUANT TO CHAPTER 27 OF THE TEXAS CIVIL PRACTICE AND REMEDIES CODE (THE TEXAS CITIZENS PARTICIPATION ACT (TCPA))**

TO THE HONORABLE COURT:

    COMES NOW, Ian Ghrist and Ghrist Law Firm PLLC and file this motion and in support thereof would show as follows:

**Exhibits**

    These exhibits are attached or otherwise provided and incorporated by reference as if fully set forth herein.

Exhibit A:    Counterclaims of J. Michael Ferguson PC, Anson Financial Inc., and MBH Real Estate LLC (*Ghrist Law Firm et. al. v. J. Michael Ferguson PC et. al.*, Cause No. 017-287611-16, 17th District Court of Tarrant County, Texas)

Exhibit B:      Ghrist Law Firm PLLC and Ian Ghrist's Fourth Amended Petition and Demand for Accounting (*Ghrist Law Firm et. al. v. J. Michael Ferguson PC et. al.*, Cause No. 017-287611-16, 17th District Court of Tarrant County, Texas)

Exhibit C:      Charge of the Court (*Ghrist Law Firm et. al. v. J. Michael Ferguson PC et. al.*, Cause No. 017-287611-16, 17th District Court of Tarrant County, Texas)

Exhibit D:      Plaintiff's Original Petition in Cause No. DC-18-09192 Listing AFI Loan Servicing LLC as Successor in Interest to Anson Financial Inc.

Exhibit E:      The Ferguson Parties' First Amended Counterclaim Filed 7/18/2017 in the 17th District Court Lawsuit

Exhibit F:      The Ferguson Parties' Second Amended Counterclaim Filed 9/6/2017 in the 17th District Court Lawsuit

Exhibit G:      Scheduling Order in the 17th District Court Lawsuit

Exhibit H:      Plaintiff's Exhibits 1 and 4 in the 17th District Court Lawsuit, Showing that the Property That is the Subject of This Lawsuit was Also the Subject of that Lawsuit

Exhibit I:      Plaintiffs' Response to Defendants' Motion for Summary Judgment in the 17th District Court Case

Exhibit J:      Defendants' Response to Plaintiffs' Motion for Summary Judgment in the 17th District Court Case

Exhibit K:      Appellate Record (Clerks' Record and Reporter's Record) in Cause No. 02-18-00332-CV, 2nd Court of Appeals, Fort Worth, Texas, which is the appeal of the case in the 17th District Court. We ask the Court to take judicial notice of this appellate record. We confirmed with the District and Appellate Clerk that the judge of this Court has access to the full appellate record and can view it without any further action on our part. In the event that the judge of this Court has any trouble accessing the appellate record, then it can be accessed here: https://www.dropbox.com/s/o2cll4qiat1nyob/Appellate%20Record.zip?dl=0

Exhibit L:      Employment Agreement Between Joseph Yammine and Mike Ferguson

Exhibit M:      Ian Ghrist affidavit and attorney's fees

Exhibit N:      Final Judgment from the 17th District Court

## I.   INTRODUCTION

1.1      Ian Ghrist and Ghrist Law Firm PLLC went through a two-week jury trial in April of 2018 with the same Plaintiffs in this lawsuit over essentially the same issues. The only difference in parties appears to be AFI Loan Servicing LLC, which is a company that purports to be a "successor-in-interest" to Anson Financial Inc. *See* Exhibit D (style of the case). AFI Loan

Servicing LLC had nothing to do with the subject of this lawsuit and the reason for its inclusion in this case is not clear.

1.2     The claims raised by the Plaintiffs against Ian Ghrist and Ghrist Law Firm PLLC are or will soon be barred by *res judicata*. The Judge of the 17th District Court converted the jury verdict to a judgment on 10/09/2018. *See* Ex. N. However, in prior hearings in this Court, the plaintiffs waived the issue on the record of whether the case is ripe for dismissal based on the fact that the 17th District Court case is on appeal right now in order to avoid abatement while the appeal is pending. The movants ask this Court to take judicial notice of the record from the two prior hearings on the previous motion to abate due to lack of dominant jurisdiction. At those hearings, the plaintiffs waived all arguments for abatement in favor of proceeding with outright dismissal of their claims in the event that the claims should have been raised in the 17th District Court lawsuit.

1.3     Additionally, all claims in this case against all defendants are barred by collateral estoppel, specifically "estoppel by verdict." The 17th District Court jury charge, in Questions 45 and 46,[1] which is Exhibit C hereto, contained findings by the jury that J. Michael Ferguson knew about Ian Ghrist's 13.33% ownership interest in the MBH Portfolio, including the Purselley Property that is the subject of this lawsuit,[2] and agreed to that ownership interest. Because of those two findings, all of the claims raised in this lawsuit fail as a matter of law. None of the claims raised in this lawsuit against any of the defendants can prevail unless this Court enters a

---

[1] Questions 45 and 46, Ex. C.
[2] See the Definition of the MBH Portfolio in the Charge of the Court (Ex. C) and Trial Exhibits 1 and 2 defining the MBH Portfolio as including the Purselley Property that this lawsuit is based upon (Ex. H).

fact finding that is contrary to the facts found by the jury in the 17th District Court in response to special questions 45 and 46 in the jury charge. This Court cannot relitigate that issue.

1.4    This lawsuit is a frivolous lawsuit that was filed solely for harassment. The Plaintiffs have made that clear to everyone involved that they intend to harass and vex everyone involved and that they have no colorable reasons for filing the suit.

## II.    FACTS

2.1    The movants ask the Court to take judicial notice of the attached exhibits, which are true and correct copies of filings in other, related lawsuits. We have been informed by the District and Appellate clerks that the trial court judge, in this suit, in Tarrant County, Texas has access to all other filings in the 2nd Court of Appeals or other Tarrant County Courts and that, accordingly, refiling in this suit is unnecessary for purposes of the taking of judicial notice, admission of other filings, and consideration of those other filings in other cases in Tarrant County or in the 2nd Court of Appeals of Fort Worth, Texas. We ask the Court to take judicial notice of the appellate record in Cause No. 02-18-00332-CV, 2nd Court of Appeals, Fort Worth, Texas, which is the appeal of the case in the 17th District Court.

2.2    J. Michael Ferguson PC (Mike Ferguson's law firm); Anson Financial Inc. (Mike Ferguson's mortgage company); AFI Loan Servicing LLC (Mike Ferguson's successor-in-interest mortgage company to Anson Financial Inc.); and MBH Real Estate LLC (the company in dispute between Ian Ghrist and Mike Ferguson in the 17th District Court lawsuit) are referred to hereinafter as "The Ferguson Parties."

2.3    Ian Ghrist and Ghrist Law Firm PLLC are referred to hereinafter as "The Ghrist Parties." Shawn Coker; Blue Moon Realty Group LLC; Neighborhood Partner Inc.; and Wizard Funding LLC are referred to hereinafter as "The Coker Parties."

2.4    The Ghrist Parties sued the Ferguson Parties in the 17th District Court lawsuit. That lawsuit went through a two-week jury trial in April of 2018.[3] The jury verdict demonstrated that Mr. Ghrist prevailed on essentially every claim other than the request for exemplary damages. The Ferguson Parties essentially lost every counterclaim that they raised. The nature of the lawsuit was that the parties argued over how to divide up the forty-plus mortgage loans that belonged to the Coker Parties. Specifically, ownership of MBH Real Estate LLC was in dispute. The proceeds from the MBH property was in dispute. The property that is the subject of this lawsuit, hereinafter "The Purselley Property," was just one mortgage loan out of a portfolio of loans consisting of over forty mortgage loans that were in dispute in the 17th District Court lawsuit.[4] Accordingly, this lawsuit is nothing more than a dispute about one particular loan out of over forty loans that were in dispute in the 17th District Court lawsuit.

2.5    All of the claims that have been raised against The Ghrist Parties have, at one time or another and in one form or another, been claims that were raised in the 17th District Court lawsuit. On 7/18/2017, the claim related to Section 12.002 of the Texas Civil Practice and Remedies Code on The Purselley Property was raised, along with the libel per se claim that the Court of Appeals found to be meritless on the Anti-SLAPP motion appeal in this case. *See* Ex. E.

---

[3] Ex. C – Charge of the Court.
[4] Exs. C and H – Charge of the Court and Exhibits referenced in the Charge of the Court as defining the "MBH Portfolio."

2.6    See the motion for summary judgment responses, Exhibits I and J, for examples of what the subject matter of the 17th District Court lawsuit encompassed. Also see the pleadings and charge of the court. Exs. A, B, C, D, E, and F. It was a broad lawsuit encompassing all aspects of the MBH Portfolio matter and the business dealings between Ian Ghrist, J. Michael Ferguson, and Shawn Coker, and the various entities owned or operated by those three persons. See the summary judgment responses, which are attached hereto as Exhibits I and J for detailed statements and evidence about the claims litigated in the 17th District Court. Also, see Exhibit K, which is a link to the full appellate record of the trial proceedings in the 17th District Court case. Please take judicial notice of the entire clerk's and reporter's record for the trial in the 17th District Court case. This Court only needs to decide whether there is some relationship to the 17th District Court case in order to determine whether these claims could have been brought, in the exercise of diligence, in the 17th District Court. This Court does not need to review the entire litigation file in the 17th District Court to see that a relationship does exist and that these claims could have been brought in the 17th District Court.

2.7    As can be seen from the Charge of the Court in the 17th District Court lawsuit, Ex. C herein, the Ferguson Parties went to trial on their claims for Breach of Fiduciary Duty (primarily related to the receivership, but also related to the absurd and utterly frivolous "secret representation" theory, *inter alia*),[5] Conversion,[6] and Breach of Contract,[7] among other claims. The Ferguson Parties dismissed or failed to submit jury questions on many of their claims and causes of action as can be seen by comparing their pleadings to the final charge of the court. Claims that the Ferguson Parties dropped included claims under the Texas Deceptive Trade

---

[5] Question 30, Ex. C.
[6] Question 35, Ex. C.
[7] Questions 1, 6, 24, 27, Ex. C.

Practices Act, violations of Section 12.002 of the Texas Civil Practice and Remedies Code, Conspiracy, and Fraud.

2.8     As can be seen from the pleadings, the subject matter of the lawsuit in the 17th District Court was the entire MBH Portfolio as defined by the Charge of the Court, and all transactions related to the MBH Portfolio, which included The Purselley Property (the property that is the subject of this lawsuit), as well as the receivership over Metro Buys Homes, and the transaction between Ferguson and Coker. All of those matters were raised in the 17th District Court lawsuit. We spent years litigating those things, performed extensive discovery, and put on a two-week jury trial. There is no way that this Court can possibly hear this case without re-litigating the matters that were litigated in the 17th District Court.

### III.    LEGAL ARGUMENTS

3.1     Any claims that the Ferguson Parties could have raised against the Ghrist Parties in the 17th District Court should have been raised in that lawsuit. *See In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 292 (Tex. 2016) (the compulsory counterclaim rule governs dominant jurisdiction issues and the Court must abate for lack of dominant jurisdiction if the claims could have been raised in a prior filed suit). Under the Compulsory Counterclaim Rule, Tex. R. Civ. P. 97(a), the Ferguson Parties, in the 17th District Court case, had to "state as a counterclaim any claim within the jurisdiction of the court . . . [that] arises out of the transaction or occurrence that is the subject matter of [the suit] and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Obviously, the 17th Judicial District Court could just as easily have acquired jurisdiction over the Coker Parties and the Sendera Parties as easily as it could have acquired jurisdiction over the Ghrist Parties and the Ferguson Parties. All parties live or work in Tarrant County, Texas. Accordingly, all claims in this lawsuit are clearly

barred by the compulsory counterclaim rule. This Court is even located in the same county as the 17th District Court, which begs the question whether the Ferguson Parties are simply forum-shopping because they did not like the 17th District Court.

3.2    "It is not required that the exact issues and all the parties be included in the first action before the second is filed, provided that the claim in the first suit may be amended to bring in all necessary and proper parties and issues." *Wyatt v. Shaw Plumbing Co*., 760 S.W.2d 245, 247 (Tex. 1988); *Also see Hurtado v. De Jesus Gamez*, No. 13-11-00354-CV, 2012 Tex. App. LEXIS 4510, at *10 (App.—Corpus Christi June 7, 2012).

3.3    The caselaw is clear that this lawsuit cannot proceed against any parties because all parties could easily have been joined in the 17th District Court case because they all live or work in Tarrant County, Texas. However, the movants on this motion are the Ghrist Parties and the Ghrist Parties are seeking dismissal due to this Court's lack of dominant jurisdiction.

3.4    <u>Res Judicata</u>. "Generally people are not bound by a judgment in a suit to which they were not parties. *See* Tex.Civ.Prac. & Rem.Code § 37.006(a). The doctrine of *res judicata* creates an exception to this rule by forbidding a second suit arising out of the same subject matter of an earlier suit by those in privity with the parties to the original suit. *See Crow Iron Works,* 582 S.W.2d at 771–72. The purposes of the exception are to ensure that a defendant is not twice vexed for the same acts, and to achieve judicial economy by precluding those who have had a fair trial from relitigating claims. *Benson v. Wanda Petroleum Co.,* 468 S.W.2d 361, 363 (Tex.1971)." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 653 (Tex. 1996). "People can be in privity in at least three ways: (1) they can control an action even if they are not parties to it; (2) their interests can be represented by a party to the action; or (3) they can be successors in interest, deriving their claims through a party to the prior action. *Getty Oil Co. v. Insurance Co.*

*of N. Am.,* 845 S.W.2d 794, 800 (Tex.1992); *Benson,* 468 S.W.2d at 363." *Id.* Accordingly, *res judicata*, dominant jurisdiction, and the compulsory counterclaim rule are quite broad in their scope and encompass any claims of AFI Loan Servicing LLC as successor to Anson Financial Inc., or as a party controlled by J. Michael Ferguson, or as a party whose interests were represented by Ferguson and Anson in the 17th District Court case.

3.5    "Generally, *res judicata* prevents a plaintiff from abandoning claims and subsequently asserting them when the claims could have been litigated in the prior suit. *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex.2007)." *Matlock Realty Enter., Inc. v. Crown Fin., LLC*, 02-15-00189-CV, 2016 WL 438381, at *3 (Tex. App.—Fort Worth Feb. 4, 2016, no pet.). In this case, that is exactly what happened. The Ferguson Parties abandoned claims and then subsequently asserted them when they clearly could have been litigated in the prior suit.

3.6    "We reaffirm the 'transactional' approach to res judicata. A subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which through the exercise of diligence, could have been litigated in a prior suit." *Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 631 (Tex. 1992).

> "Under the transactional approach followed in Texas, and also followed by the Fifth Circuit, a subsequent suit is barred if it arises out of the same subject matter as the prior suit, and that subject matter could have been litigated in the prior suit. *Id.*; *see Xitronix Corp. v. KLA–Tencor Corp.*, No. 03–12–00206–CV, 2014 WL 3893082, at *3 n.4 (Tex.App.–Austin Aug. 7, 2014, pet. denied) (mem.op.). A final judgment on an action extinguishes the right to bring suit on the transaction, or series of connected transactions, out of which the action arose. *Citizens Ins. Co.*, 217 S.W.3d at 449 (*quoting Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 631 (Tex.1992)). Determining the scope of the subject matter or transaction of the prior suit requires an analysis of the factual matters that make up the gist of the complaint, without regard to the form of action. *Id.* (*quoting Barr,*

837 S.W.2d at 630). This should be done pragmatically, giving weight to such considerations as (1) whether the facts are related in time, space, origin, or motivation, (2) whether they form a convenient trial unit, and (3) whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage. *Id.* (*quoting Barr*, 837 S.W.2d at 630). Any cause of action which arises out of those same facts should, if practicable, be litigated in the same lawsuit. *Id.* (*quoting Barr*, 837 S.W.2d at 630)."

*Matlock Realty Enter., Inc. v. Crown Fin., LLC*, 02-15-00189-CV, 2016 WL 438381, at *3 (Tex. App.—Fort Worth Feb. 4, 2016, no pet.).

3.7    Collateral estoppel. "Collateral estoppel applies when an issue decided in the first action is actually litigated, essential to the prior judgment, and identical to an issue in a pending action. The doctrine is designed to promote judicial efficiency and to prevent inconsistent judgments by preventing any relitigation of an ultimate issue of fact. Collateral estoppel does not require mutuality. It applies when the party against whom it is asserted had a full and fair opportunity to litigate the issue in the prior suit." *Texas Dept. of Pub. Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001). "Broadly speaking, res judicata is the generic term for a group of related concepts concerning the conclusive effects given final judgments. *Puga v. Donna Fruit Co.,* 634 S.W.2d 677, 679 (Tex.1982). Within this general doctrine, there are two principal categories: (1) claim preclusion (also known as res judicata); and (2) issue preclusion (also known as collateral estoppel). Res judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit. *Gracia v. RC Cola–7–Up Bottling Co.,* 667 S.W.2d 517, 519 (Tex.1984); *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984). Issue preclusion, or collateral estoppel, prevents relitigation of particular issues already resolved in a prior suit." *Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992).

3.8     As can be seen from the exhibits and records that this Court should take judicial notice of from the 17th District Court, all claims should have been litigated in the 17th District court as this case is related to the same nucleus of facts and circumstances that gave rise to the litigation.

### IV.    MOTION TO DISMISS CLAIMS PURSUANT TO THE TEXAS CITIZEN'S PARTICIPATION ACT (TCPA)

Ian Ghrist and Ghrist Law Firm PLLC move to dismiss claims against them under the TCPA and in support thereof would show as follows:

#### a.    Introduction

4.1     On 12/06/2018, the plaintiffs filed a document that purports to be a "Supplement" to their "Fourth Amended Petition." Rules 64 and 65 clearly provide that the plaintiffs can have only one pleading on file at a time and that when you file a supplement, it replaces the prior pleading in its entirety. Accordingly, this pleading should be treated as the plaintiffs fifth amended pleading. Regardless, the pleading filed on 12/06/2018 alleges claims against Ian Ghrist and Ghrist Law Firm for "Breaches of fiduciary duties & tortious interference to Anson Financial Inc. related to the $129,000 Yammine Tax Loan." These claims are frivolous and should be dismissed pursuant to the TCPA.

#### b.    Legal Standard

4.2     The basic operation of the TCPA is straightforward: If, as here, a legal action "is based on, relates to, or is in response to the party's exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association," then the claim is subject to a motion to dismiss that must be granted unless the respondent can establish "by clear and specific evidence a prima facie case for each essential element" of his or her claim. Tex. Civ. Prac. & Rem. Code Ann. §

27.005(b), (c) (West 2013) (emphasis added). Furthermore, if the movant can establish an affirmative defense by a preponderance of the evidence, the motion must be granted. *Id.* at § 27.005(d).

4.3     The TCPA Applies to these claims. The Plaintiffs' claims in this suit are a "legal action" based on the (1) exercise of free speech rights with regard to matters of public concern, and (2) the right of association. Tex. Civ. Prac. & Rem. Code §§ 27.001(3), (4). Matters of public concern include issues related to "environmental, economic, or community well-being" and "a good, product, or service in the marketplace." *Id.* at 27.001(7). The Texas Supreme Court has interpreted "matters of public concern" broadly. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015). The TCPA defines "exercise of the right of association" broadly to mean "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." Tex. Civ. Prac. & Rem. Code § 27.001(2). In the case of *Cavin v. Abbott*, the Austin Court of Appeals says "The Texas Supreme Court's analysis in *Coleman* forecloses any possibility that we should view 'relates to' or 'in response to' as limited according to, e.g., the nature, directness, or strength of such connections" and goes on to say that the TCPA applies even where the statements or associations have an "indirect," "tenuous," or "remote" connection to the rights of free speech, free association, and petition. *Cavin v. Abbott*, No. 03-16-00395-CV, 2017 WL 3044583, at *15–16 (Tex. App.—Austin July 14, 2017). Accordingly, the movants need only to show an indirect, tenuous, or remote connection to the rights of free speech or the right of association.

4.4     The only limitation on the connection to free speech or association is whether it would be "absurd" to try to connect the complained-of conduct to free speech, the right of association, or the right to petition. *Id.* The TCPA is not limited to defamation or libel claims and

has been applied to claims for conversion, civil conspiracy, misappropriation, violation of Texas Uniform Trade Secrets Act, unfair competition, and breach of fiduciary duty, among other causes of action. *Rehak Creative Servs. v. Witt*, 404 S.W.3d 716, 733 (Tex. App.—Houston [14th Dist.] 2013) (movant's burden on TCPA motion satisfied as to conversion, civil conspiracy, and misappropriation claims); *Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 194 (Tex. App.—Austin 2017) (TCPA applied to trade-secret misappropriation, violation of Texas Uniform Trade Secrets Act, unfair competition, breach of fiduciary duty, and civil conspiracy). Moreover, the TCPA is far broader than the constitution in its application and, accordingly, there is no requirement that the movant show that the movant was engaged in constitutionally-protected speech. *Id.*

      4.5   <u>The Right of Association</u>. The right of association has been broadly defined as applying to communications "between individuals who join together to collectively . . . promote, pursue, or defend common interests." In *Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, when former employees left for a new company, shared information, and the former employer alleged that the information shared was confidential and should not have been shared, then that sharing of information was held to be a communication between individuals who joined together to collectively promote their business interests, thus, satisfying the movant's TCPA burden on the right of association. *Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 194 (Tex. App.—Austin 2017) (TCPA applied to trade-secret misappropriation, violation of Texas Uniform Trade Secrets Act, unfair competition, breach of fiduciary duty, and civil conspiracy). The *Elite Auto Body* Court held that the appellants' "communications as they promote and pursue their common interests in developing and maintaining a competitive auto body repair business" were related to the right to free speech and the right of association. *Id.* "[E]very court to have considered

the issue has recognized that the constitutionally-protected right of association applies directly to both a client's choice of legal counsel to represent and advise it, and a client's interactions with its chosen legal counsel." *Cheniere Energy, Inc. v. Lotfi*, 449 S.W.3d 210, 215 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing appellant's brief).

4.6    The right of association includes attorney-client relationships. "every court to have considered the issue has recognized that the constitutionally-protected right of association applies directly to both a client's choice of legal counsel to represent and advise it, and a client's interactions with its chosen legal counsel. *See, e.g., Denius v. Dunlap*, 209 F.3d 944, 953–54 (7th Cir. 2000) ('[t]he right to hire and consult an attorney is protected by the First Amendment's guarantee of freedom of speech, association and petition" and "[i]t has long been recognized that the First Amendment prohibits the state from interfering with collective action by individuals to seek legal advice and retain legal counsel').[8]" Appellant's Brief, *Cheniere*, 449 S.W.3d 210. The preservation of the right to freely choose whom to retain as legal counsel is a matter of public concern. *See e.g. Martin v. Lauer*, 686 F.2d 24, 32 (D.C. Cir. 1982).

4.7    The broad applicability of the statute is demonstrated by the following cases: *Watson v. Hardman*, 497 S.W.3d 601, 603 (Tex. App.—Dallas 2016). (statements accusing couple of stealing publicly solicited charitable funds); *Deaver v. Desai*, 483 S.W.3d 668, 673 (Tex.

---

[8] *See also Mothershed v. Justices of the Supreme Court*, 410 F.3d 602, 611 (9th Cir. 2005) (same); *Martin v. Lauer*, 686 F.2d 24, 32 (D.C. Cir. 1982) (private parties "have an undeniable right" under the First Amendment to "retain counsel to ascertain their legal rights" and to "speak freely about their legal problems" with their chosen counsel); *DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 1990) ("the right to retain and consult with an attorney . . . implicates . . . clearly established First Amendment rights of association and free speech"); *First Defense Legal Aid v. City of Chicago*, 225 F. Supp. 2d 870, 882 (N. D. Ill. 2002) ("[i]t is beyond dispute that there is a firmly established right of association between attorneys and persons they have been asked to represent"), *rev'd on other grounds*, 319 F.3d 967 (7th Cir. 2003); *In re TLB.*, 762 A.2d 20, 28–29 (D.C. Ct. App. 2000) ("it is settled that 'the First Amendment protects the right of an individual or group to consult with an attorney on any legal matter"); *Texas Dep't of Human Res. v. Texas State Emps. Union CWA/AFL-CIO*, 696 S.W.2d 164, 168–69 (Tex. App.—Austin 1985, no writ) (noting that the right of association is protected by the First Amendment (and the Texas Constitution)).

App.—Houston [14th Dist] 2015, no pet.) (online statements accusing someone of identity theft); *Neyland v. Thompson*, No. 03-13-00643-CV, 2015 WL 1612155, at *5 (Tex. App.—Austin Apr. 7, 2015, no pet.) (mem. op.) (statements by homeowner's association members about possible misconduct by the association's property manager); *AOL, Inc. v. Malouf*, Nos. 05-13-01637-CV & 05-14-00568-CV, 2015 WL 1535669, at *1-2 (Tex. App.—Dallas Apr. 2, 2015, no pet.) (mem. op.) (statements made about a children's baseball coach's angry and aggressive behavior during a game). In addition, courts have found statements to relate to community or economic well-being when those statements are directed to members of the community potentially affected by the information. *See Neyland*, 2015 WL 16121155, at *5 (statements to local television reporter about alleged misappropriation of funds and possible fraud related to community well-being); *Bilbrey v. Williams*, No. 02-13-00332-CV, 2015 Tex. App. LEXIS 2359 (App.—Fort Worth Mar. 12, 2015) (report from a coach to the president of a baseball association about one of the other coach's abusive behavior related to community well-being). In *ExxonMobile Pipelinne Co. v. Coleman*, the Texas Supreme Court went so far as to apply the TCPA to internal emails about a "private employment matter" because the statements related to a pipeline that could have caused environmental damage, which made the statements a matter of public concern, despite their private, internal, and employment-related nature. *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900 (Tex. 2017).

4.8    "The TCPA defines 'exercise of the right of free speech' as 'a communication made in connection with a matter of public concern.' Tex. Civ. Prac. & Rem. Code § 27.001(3). A '[c]ommunication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic.' *Id.* § 27.001(1). Finally, a '[m]atter of public concern' includes an issue related to: (A) health or safety; (B) environmental,

economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace.' *Id.* § 27.001(7)." *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898-99 (Tex. 2017).

  4.9 <u>Standards for Granting or Denying This Motion</u>. In general, the court must grant a motion under the TCPA and dismiss the action within the 30-day window if the movant shows by a preponderance of the evidence that the action is based on, relates to, or is in response to the party's exercise of the right of free speech, the right to petition, or the right of association. Tex. Civ. Prac. & Rem. Code § 27.005(b). The claimant may avoid dismissal, however, by establishing through "clear and specific evidence" a prima facie case for each essential element of the claim in question Tex. Civ. Prac. & Rem. Code § 27.005(c). 20-333 Dorsaneo, Texas Litigation Guide § 333.42 (2017). Even if the claimant makes the required showing of clear and specific evidence for each essential element of the claim, the movant may nevertheless obtain dismissal if it establishes by a preponderance of the evidence each essential element of a valid defense to the claim. Tex. Civ. Prac. & Rem. Code § 27.005(d).

  4.10 <u>Pleadings and Affidavits as Evidence</u>. The TCPA does not require the movant to present testimony or any evidence as the burden may be carried solely based upon consideration of the pleadings as evidence. Tex. Civ. Prac. & Rem. Code § 27.003. Tex. Civ. Prac. & Rem. Code § 27.005(d); *Serafine v. Blunt*, 466 S.W.3d 352, 384 n. 105 (Tex. App.—Austin 2015, no pet.) (pleadings count as evidence under the TCPA). On a TCPA motion, the Court may also consider affidavits. *Serafine v. Blunt*, 466 S.W.3d 352, 357 (Tex. App.—Austin 2015, no pet.).

### c. Arguments

  4.11 <u>The Plaintiffs' Allegations</u>. The plaintiffs' pleadings allege that "on or about November 30, 2018" Ian Ghrist "has been giving legal advice to Joseph Yammine on the same

$129,000.00 Yammine Tax Loan that [Ian Ghrist] formerly represented ANSON's interest on . . .
." Accordingly, the pleadings allege that Ian Ghrist exercised his right of association by
associating with Joseph Yammine in an attorney-client relationship. The pleadings go on to say
that Ian Ghrist gave "instructions to Yammine to go around ANSON and to deal with ANSON's
investors." As evidence of the foregoing, the plaintiffs' attached to their pleadings an email from
"Prop Sky" to "Aaron Vrana" saying "Ian ghrist said Jerry Jones is the one to issue partial
release." The plaintiffs' apparently allege that Ian Ghrist told Joseph Yammine, also known as
"Prop Sky," that releases of their tax liens had to be signed by Jerry Jones, who the plaintiffs
allege to be the "investors [sic] . . . that funded the loan for the $129,000 Yammine Tax Loan."

4.12    How the Plaintiffs' Allegations Relate to the Right of Association and the Right
of Free Speech. Because the plaintiffs have alleged that Ian Ghrist associated with Joseph
Yammine in an attorney-client relationship and have asserted a cause of action based upon legal
advice that was alleged to have been given to Joseph Yammine, the plaintiffs' causes of action
relate to the right of association as defined by the TCPA. The legal advice allegedly given to
Joseph Yammine would be a "communication" for purposes the TCPA. Specifically, the
plaintiffs allege that Ian Ghrist told Joseph Yammine to "go around" them by telling Joseph
Yammine that Mr. Jones needed to release the lien rather than Anson Financial Inc. This alleged
communication from an attorney to a client was allegedly made in furtherance of Ian Ghrist's
and Joseph Yammine's attorney-client association.

4.13    When an attorney and a client enter into an attorney-client relationship, that
relationship involves "communication between individuals who join together to collectively
express, promote, pursue, or defend common interests." Tex. Civ. Prac. & Rem. Code Ann. §

27.001 (West); *Cheniere Energy, Inc. v. Lotfi*, 449 S.W.3d 210, 215 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

4.14 The tax loan is a "good, product, or service in the marketplace." Tex. Civ. Prac. & Rem. Code Ann. § 27.001 (West). Accordingly, statements or advice about the tax loan would be related to the right of free speech, as defined by the TCPA. The legal services allegedly rendered to Joseph Yammine would also be a "service in the marketplace." The TCPA applies to a "communication made in connection with a matter of public concern" and matters of public concern "includes an issue related to . . . a . . . service in the marketplace." Tex. Civ. Prac. & Rem. Code Ann. § 27.001 (West). Accordingly, the TCPA applies here where alleged legal services to Joseph Yammine are a service in the marketplace and the statements or advice about the tax loan would be "in connection with" such legal services and would necessarily "include an issue related to" such alleged legal services.

4.15 Because the complained-of communication relates to the right of association, the plaintiffs' must, in response to this motion, present *prima facie* evidence of their case. They cannot do so. They cannot present prima facie evidence of the elements of proof necessary for a breach of fiduciary duty claim or a tortious interference with contractual relations claims. In particular, there is no evidence of damages, no evidence that anything wrongful occurred, no evidence that the alleged communications even took place, and no other evidence to support these claims, damages related to the claims, or the causation link between the allegedly wrongful conduct and any damages. Further, Ian Ghrist's alleged communications would be fully protected by both absolute and qualified privileges and attorney immunity. *See* Ian Ghrist's and Ghrist Law Firm's Second Amended Answer, filed 12/07/2018.

4.16    Objection to Joseph Yammine's statements on the grounds of hearsay. The movants object to statements made by Joseph Yammine on hearsay grounds.

4.17    J. Michael Ferguson is the owner and sole operator of Anson Financial Inc. No other person has authority to control Anson Financial Inc. J. Michael Ferguson served Joseph Yammine, previously, as Joseph Yammine's attorney. J. Michael Ferguson was in an attorney-client relationship with Joseph Yammine. Accordingly, as the owner and sole operator of Anson Financial Inc., Mr. Ferguson and Anson (his subsidiary) cannot keep anything confidential from Joseph Yammine and have a duty to fully disclose to Joseph Yammine.

4.18    Motion for Summary Judgment as to Claims Related to the Yammine Tax Loan and Request for Declaratory Relief. As shown by the employment agreement and conflict waiver, Mike Ferguson owns and controls Anson Financial Inc. As Joseph Yammine's attorney, Mr. Ferguson cannot keep anything confidential from Mr. Yammine or prevent Mr. Ghrist or any other attorney from representing Mr. Yammine. Because Anson Financial Inc. operates as a subsidiary of J. Michael Ferguson, Mr. Ferguson cannot hide behind the corporate veil to shirk his duties to his own client—Joseph Yammine. Under these circumstances, where the owner and sole operator of Anson Financial Inc. is Joseph Yammine's attorney, summary judgment must be granted because Mr. Ferguson, regardless of whether he makes claims through Anson Financial Inc. or through his law firm, cannot restrict Mr. Yammine's right to choice of counsel or hide any information from Mr. Yammine, who is Mr. Ferguson's own client. Because of the foregoing, summary judgment should be granted against Anson on Anson's claims of breaches of fiduciary duties and tortious interference. The request for declaratory relief is not a live controversy over which this Court has jurisdiction because the Purselley loan has already closed and no remaining dispute exists with respect to that property. The question of who should have

signed the release is moot now because the loan has been paid off and released regardless of who should have signed the release. Accordingly, this Court cannot entertain a suit for declaratory relief as there is no justiciable controversy.

4.19    As additional grounds for summary judgment, the pleadings do not allege any facts that could support any of the causes of action pled related to the Yammine tax loan. Accordingly, the Court should grant a summary judgment on the pleadings on this claim because the plaintiffs failed to plead facts that, if true, could support the causes of action raised related to the Yammine tax loan. Summary judgment may . . . be proper if a pleading deficiency is of the type that could not be cured by an amendment. *Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex. 1998). The rules allow for a summary judgment on the plaintiffs' pleadings in cases where "the facts alleged by a plaintiff establish the absence of a right of action or an insuperable barrier to a right of recovery." *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972). This is such a case. The facts alleged utterly fail to support any conceivable cause of action or damages for any conceivable cause of action. Moreover, the affirmative defenses raised, like attorney immunity and priviledge, are insuperable barriers to recovery.

## V.    PRAYER

5.1    The Ghrist Parties previously prevailed on an Anti-SLAPP motion. The Court of Appeals awarded attorney's fees and court costs to the Ghrist Parties. The Court of Appeals remanded to the trial court to determine the amounts to award.

5.2    Additionally, the Ghrist Parties allege that the Texas Deceptive Trade Practices Act (DTPA) Claims that were alleged against them in this case were alleged in bad faith.

Accordingly, the Ghrist Parties seek attorney's fees incurred in connection with the DTPA claims.

5.3     Additionally, the Ghrist Parties seek attorney's fees, court costs, and sanctions on the Anti-SLAPP motion filed in this instrument under the TCPA. Sanctions are mandatory on an Anti-SLAPP motion. The Court must award such sanctions as would sufficiently deter the filing of additional frivolous lawsuits. In this case, where the plaintiffs already had their defamation/libel claims dismissed on an Anti-SLAPP motion, and then filed yet another frivolous claim subject to the TCPA, the Court cannot find that no sanctions are necessary to deter the plaintiffs from the filing of similar meritless suits. Accordingly, the Court must sanction the plaintiffs. The Ghrist Parties would seek three times the amount of attorney's fees awarded as sanctions in this case. The Ghrist Parties would refer the Court to the net worth affidavit on file in the previous Anti-SLAPP motion as additional evidence of the amount of sanctions necessary to deter the conduct at issue, together with the allegations in Exhibit M herein. We ask for the amounts in attorney's fees and sanctions as listed in Exhibit M to be awarded, together with court costs, pre- and post-judgment interest, and such other and further relief to which we may be justly entitled.

5.4     Ian Ghrist and Ghrist Law Firm PLLC seek dismissal of all claims against them and an award of attorney's fees and sanctions, with pre- and post-judgment interest and court costs, as specified in Exhibit M, Ian Ghrist Affidavit.

Respectfully submitted,

Ghrist Law Firm PLLC

_____/s/ Ian Ghrist_____
By: Ian Ghrist
SBOT No. 24073449

2735 Villa Creek Drive, Ste 140
Farmers Branch, Texas 75234
Phone (817) 778-4136
Fax (817) 900-2863
ian@ghristlaw.com
Attorney for Ian Ghrist and Ghrist Law Firm
PLLC

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing instrument was served upon the following persons by electronic service on this the 17th day of January, 2019.

Tom Herald          _____/s/ Ian Ghrist_____
62 Main St., Suite 310     Ian Ghrist
Colleyville, Texas 76034
Tel. (817) 267-1008
Fax (817) 485-1117        Roland Johnson
tom@taheraldpc.com      Caroline M. Cyrier
and any other electronic service list emails    Harris, Finley & Bogle, PC
Attorney for Plaintiffs      777 Main Street, Suite 1800
                       Fort Worth, Texas 76102
Anthony Cuesta         rolandjohnson@hfblaw.com
801 Cherry St. #46        ccyrier@hfblaw.com
Burnett Plaza, Ste 2000     Attorney for Sendera Defendants
Fort Worth, Texas 76102
817-336-2400
Fax 817-332-3043
acuesta@deckerjones.com
Attorney for Coker defendants

## Certificate of Conference

We discussed these matters at both hearings on the motions to abate and the plaintiffs were opposed to the dismissal of all of their claims. Also, certificates of conference are not generally required on dispositive motions.

               _____/s/ Ian Ghrist_____
               Ian Ghrist