017-287611-16

Case 21-41517-elm11 Doc 245-19 Filed 02/24/22 Entered 02/24/22 14:04:58 Page 1 of 24

Exhibit ANS143 - Page 1 of 24

FILED
TARRANT COUNTY
9/14/2017 1:39:57 PM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. 017-287611-16

| | | |
|---|---|---|
| GHRIST LAW FIRM, PLLC, AND IAN GHRIST | § § § | IN THE DISTRICT COURT |
| *Plaintiffs,* | § § | |
| VS. | § § | |
| J. MICHAEL FERGUSON, P.C.; J. MICHAEL FERGUSON; ANSON FINANCIAL, INC.; AND MBH REAL ESTATE, LLC | § § § § | 17th JUDICIAL DISTRICT |
| *Defendants/Counter-Claimants/Third Party Plaintiff* | § § § | |
| VS. | § § | |
| DIA SERVICING, LLC, DIA FINANCIAL, LLC, ASHLEIGH RENFRO, AND DEREK HAUSHEER | § § § § | |
| *Third-Party Defendants* | § | TARRANT COUNTY, TEXAS |

---

**PLAINTIFFS' FOURTH AMENDED PETITION AND DEMAND FOR ACCOUNTING**

---

**TO THE HONORABLE COURT:**

Plaintiffs Ghrist Law Firm, PLLC and Ian Ghrist file this Fourth Amended Petition and Request for Accounting and in support would show:

## I.   DISCOVERY CONTROL PLAN

1.1    Plaintiff intends to conduct discovery under Discovery Control Plan Level 3. *See* TEX. R. CIV. P. 190.

## II.  PARTIES

2.1     Plaintiff, Ian Ghrist, (Ghrist) is an individual residing in Tarrant County, Texas at 7909 Ulster Drive, North Richland Hills, Texas 76180.

2.2     Plaintiff Ghrist Law Firm, PLLC is a Texas Professional Limited Liability Company located at 2735 Villa Creek Drive, Suite 250A, Farmer's Branch, Texas 75234. Ghrist Law Firm, PLLC was formerly known as Ian Douglas Ghrist, PLLC.

2.3     Defendant, J. Michael Ferguson, P.C., is a Texas Professional Corporation doing business in Tarrant County, Texas and may be served with process through its registered agent J. Michael Ferguson at 1210 Hall Johnson Road, Suite 100, Colleyville, Texas 76034.

2.4     Defendant J. Michael Ferguson is an individual residing in Tarrant County, Texas and may be served with process at his personal residence at 1591 S. Gravel Circle, Southlake, Texas 76092 or at his place of business at 1210 Hall Johnson Road, Suite 100, Colleyville, Texas 76034.

2.5     Defendant Anson Financial, Inc. is a Texas corporation doing business in the state of Texas and may be served with process through its registered agent J. Michael Ferguson at 1210 Hall Johnson Road, Suite 100, Colleyville, Texas 76034.

2.6     MBH Real Estate, LLC purports to be a Texas Limited Liability Company doing business in the State of Texas and may be served with process through its registered agent, J. Michael Ferguson, P.C. at 1210 Hall Johnson Road, Suite 100, Colleyville, Texas 76034.

## III.  JURISDICTION

3.1     The district court has jurisdiction over this cause of action because it is within the jurisdictional limits of the court.  Venue in Tarrant County is proper under the Civil Practice and Remedies Code because Tarrant County is one or more of the Defendant's registered agent's county of residence; and Tarrant County is the county in which all or a substantial part of the

events giving rise to the claim occurred.

3.2    Pursuant to Texas Rule of Civil Procedure 47, Plaintiffs state that they seek monetary relief over $200,000.00 but not more than $1,000,000.00 and non-monetary relief.

## IV.    STATEMENT OF FACTS

4.1    In 2010, Shawn Coker, Neighborhood Partners, Blue Moon Realty Group, and Wizard Funding (hereinafter the "Original Plaintiffs") hired J. Michael Ferguson of J. Michael Ferguson, P.C. to represent them in connection to claims against David Boles, Metro Buys Homes, LLC, Metro Affordable Homes, Inc., and Metro Buys Homes II, LLC (hereinafter "the Boles Defendants").  Plaintiffs invested money with the Boles Defendants, but the Boles Defendants were operating a Ponzi scheme. David Boles is currently in a federal prison for his organization and operation of this scheme.

4.2    On September 27, 2010, Ferguson, on behalf of Plaintiffs, filed Cause Number 236-248435-10 in the 236th Judicial District Court of Tarrant County, Texas against the Boles Defendants. On October 28, 2011, the Court abated the case to give the U.S. Department of Justice time to pursue restitution claims against the Boles Defendants.

4.3    The Court lifted the abatement on February 7, 2013.  On May 15, 2013, while David Boles was in prison, the 236th District Court granted Original Plaintiffs' unopposed motion for summary judgment against the Boles Defendants in the amount of $1,615,178.26 plus post-judgment interest.

4.4    In November of 2013, Ferguson retained the help of licensed Texas attorney, Ian Ghrist, to collect upon the judgment. Ferguson agreed to pay Ghrist one-third of Ferguson's rights under his fee agreement with the Original Plaintiffs in the event that Ghrist found or recovered any assets. These terms were the same terms that Ferguson had with Ghrist on all other projects that

they worked on together of which there were several. Ghrist always received one-third of Ferguson's share of any projects that Ghrist worked on. In addition, Ghrist was a salaried employee of Anson Financial, Inc., a company wholly owned by Ferguson. Ian Ghrist located, through depositions of former Boles' employees, substantial non-exempt assets of the Boles Defendants, including a bank account receiving mortgage note payments on twenty-eight residential properties. On October 23, 2014, the Court placed these notes under the possession of Ian Ghrist as receiver.

4.5    Ghrist, as receiver, then hired Anson Financial to service the notes. Anson Financial was a small finance company that originated property tax loans, closed owner-financed sales of real property, and serviced loans. As note servicer for the receiver, Anson Financial collected payments from the borrowers, sent monthly statements, handled escrow accounting and payments, provided customer service, disbursed payments, and otherwise performed the duties of a loan servicer.  Anson Financial was wholly owned by attorney Ferguson.

4.6    On February 20, 2015, the 236th District Court granted the Original Plaintiff's Motion for Turnover Relief. The turnover order transferred title of the promissory notes to the Original Plaintiffs.  It further gave the Original Plaintiffs all of the Boles Defendants' interests in certain non-exempt real property and mineral interests.   These assets (collectively, "the Portfolio")[1] reduced the amount of the judgment against the Boles Defendants by $1,040,467.87.

4.7    After the change in ownership, Anson Financial continued to service the loans. Ferguson told Ghrist and the Original Plaintiffs that many of the properties had severely delinquent property taxes owed and, consequently, that all incomes generated by the loans would need to stay with Anson Financial until the taxes could be paid and litigation expenses could be reimbursed according to the terms of the original contract between Ferguson and the Original Plaintiffs.

---

[1] In this document, references to the "Portfolio" include reference to the additional properties or notes acquired through the mediation with the associate of the Boles Defendants

4.8     On or about June 1, 2015, Ian Ghrist and the Original Plaintiffs attended a mediation and entered into a settlement agreement with an associate of the Boles Defendants that resulted in recovery of an additional thirteen promissory notes secured by residential properties. The settlement paperwork, drafted by Ferguson, purportedly specified that the properties would be assigned to a new entity called MBH Real Estate, LLC—an entity that Ferguson now claims to own. Ferguson told Ghrist that he had discussed the assignment to the new entity with the Original Plaintiffs and that they had agreed to it. Ghrist later found out that this was false. The Original Plaintiffs did not agree to allow Ferguson to claim ownership of their notes and did not reach an agreement with Ferguson on the issue. Ferguson did tell Ghrist and the Original Plaintiffs that he would send out a proposed Operating Agreement for the new entity, but Ferguson never did so.

4.9     In November 2015, Ferguson produced a report to Ghrist and the Original Plaintiffs. The report showed that the delinquent taxes and litigation expenses had been paid by the incomes that the Portfolio generated. Ferguson represented to Ghrist and the Original Plaintiffs that starting in January 2016, Anson would begin sending monthly distributions from the Portfolio because the expenses had been covered. It is now September of 2016, and no payments have been received.

4.10     On December 4th, 2015, Ghrist and Ferguson met and discussed a separation. Ghrist and Ferguson memorialized this decision with a written separation agreement (the "Separation Agreement"). The separation agreement provides that Ian Ghrist has a 13.33% stake in MBH Real Estate, LLC and all property or funds recovered from the Boles Defendants. The 13.33% stake was derived from a one-third share of Ferguson's 40% contingency fee agreement. At the time of the meeting, Ferguson promised to start remitting monthly payments starting in January of 2016. At the meeting, Ferguson represented to Ghrist that, pursuant to the November report, all expenses

had been paid and profit distributions would begin on a monthly basis starting in January 2016. It is now September of 2016 and no payments have been made.

4.11    Ferguson made sporadic payments for odd amounts to the Original Plaintiffs starting sometime in 2015. After the Original Plaintiffs threatened Ferguson with a lawsuit related to the inconsistent and haphazard accounting practices, incompetent bookkeeping, sporadic and incorrect payments, failure to remit payments, failure to deliver tax reports, conversion of assets, unconscionable and/or unauthorized fees, servicing loans without a license, negligent mismanagement of the Portfolio, and breach of fiduciary duties related to the foregoing, Ferguson entered into a settlement agreement with the Original Plaintiffs in the summer of 2016. Regardless of whatever settlement Ferguson entered into with the Original Plaintiffs, Ferguson failed completely to pay Ghrist and to provide Ghrist with an accounting for the Portfolio that is internally consistent and that comports with reasonable bookkeeping practices. The Original Plaintiffs also demanded that Ferguson transfer servicing of the notes to a third-party and Ferguson refused to do so.  It appears that Ferguson is generating income for himself off of the portfolio by charging various legal fees and other fees for claimed needed services. When Ghrist or the Original Plaintiffs have asked to be paid, Ferguson has responded with attacking and threatening emails, insults, threatening to file frivolous litigation against third-parties unrelated to the dispute, threatening to publish slanderous and defamatory statements, threats of interference with third-party business relationships, and other baseless accusations, in an attempt to keep Plaintiffs and Original Plaintiffs from having access to the requested information and as a claimed basis for continuing to withhold payment from Plaintiffs or the Original Plaintiffs.

4.12    No tax statements have been provided. Additionally, some of the delinquent taxes appear to have been placed on payment plans when Defendants represented that the taxes had been

paid out of portfolio income. Furthermore, neither Anson Financial nor any of Ferguson's other entities have a valid Texas loan servicing license as required by Texas Finance Code section 158.051. Despite not having a proper license, Ferguson is charging a substantial amount of loan servicing fees on the Portfolio as well as legal fees to the borrowers. Ferguson has also failed to set aside, in a trust or escrow account, the borrower's tax and insurance escrow money creating potential liability for MBH.

4.13    Based on the foregoing, Anson, Ferguson, and Ferguson, PC have (a) failed to adequately and reasonably manage the bookkeeping for the Portfolio; (b) failed to produce timely tax statements for the Portfolio; (c) made false representations related to fees, forthcoming payments, taxes paid on properties, income that would be received; (d) failed to make monthly disbursements; (e) unlawfully claimed ownership of the Portfolio; (f) converted Ghrist's stake in the portfolio to Ferguson's own use; (g) personally benefitted by charging unauthorized, excessive, unjustified and/or illegal servicing and legal fees for management of the Portfolio; (h) failed to comply with the duty of loyalty, utmost good faith, candor, refrain from self-dealing, integrity of the strictest kind, fair and honest dealing, full disclosure as stated in this Petition.

4.14    Additionally, Mr. Ferguson instructed and authorized Ghrist to obtain a global joint operating agreement (the "Global Agreement") with Chesapeake Energy Company for Mr. Ferguson and other entities. The Global Agreement allowed Ferguson and other entities to purchase mineral interests in land in the State of Texas and to obtain payment for past production on those mineral interests. Ferguson and Ghrist agreed that Ghrist would receive one-third of the back production obtained through the use of the Global Agreement and furthermore that Ghrist would be paid a percentage of the ongoing revenues generated by contracts utilizing the Global

Agreement. To date, Ghrist has not been paid. On information and belief, it is alleged that funds are owed.

## V.    CAUSES OF ACTION

**BREACH OF FIDUCIARY DUTY**

5.1     Plaintiffs incorporate by reference all of the allegations contained in this petition as if fully set forth herein.

5.2     Defendants owed Plaintiffs fiduciary duties in at least two capacities—as manager of MBH Real Estate, LLC or as manager of such entity as may own, manage, or service the notes in the Portfolio and as Plaintiffs' agent in fact as his mortgage loan servicer.  As such, Defendants were obligated to act in utmost good faith and loyalty towards Plaintiffs, to refrain from self-dealing, failed to fully disclose all important information concerning matters involving the fiduciary relationship, failed to comply with the duty of loyalty, utmost good faith, candor, failed to refrain from self-dealing, failed to act with integrity of the strictest kind and failed to be fair and honest in the parties dealing.

5.3     Defendants breached those duties in several ways as stated above and including but not limited to failing to: make timely payments; provide complete financial information regarding the servicing of the mortgages, which constitutes constructive fraud[2]; self-dealing from fees charged for services, misrepresenting the income generated, fees expended, and basis for nonpayment among other misrepresentations.  In so doing, Defendants continue to profit from the servicing of the mortgages, and Plaintiffs remain uninformed about the financial status of their

---

[2] Constructive fraud arises when a fiduciary fails to disclose all material information in a transaction or when there is an unfair transaction between persons in a fiduciary relationship. *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964). The plaintiff need not prove negligence and needs only to prove the existence of a confidential relationship. *Id.* The defendant must then establish that the transaction was fair, honest, and equitable. *Id.*

assets. Third, Defendants used their position of trusted asset manager to allegedly obtain an interest in Plaintiffs' Portfolio assets. Defendants have attempted to sell Plaintiffs' stake in the Portfolio to the Original Plaintiffs without consulting Plaintiffs and without agreement or authorization. Defendants additionally charged legal, servicing, and other fees to the Plaintiffs and to the borrowers allowing undisclosed conflicts of interest to continue, or that were never agreed to, or that were unreasonable and unwarranted.

5.4    When there is an abuse of a confidential or fiduciary relationship, the burden of proof is on the fiduciary to establish the fairness of the transaction, that there was full disclosure of all the facts and circumstances, and that there was good faith and the absence of pressure and influence on the part of the fiduciary. *Fitz-Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256, 261 (1951).

5.5    As a result of Defendants' breaches of fiduciary duty, Plaintiffs have suffered and continue to suffer damages, and Defendants have benefitted. Defendants' breaches have caused, and will continue to cause, irreparable harm to Plaintiffs.

5.6    In addition to the fiduciary duties owed to the Ghrist related to Mr. Ferguson's management of the jointly owned MBH, prior to that date Mr. Ferguson was Ghrist's fiduciary as a partners and joint venturer and owed Ghrist the duties of fiduciary including the duty of loyalty, utmost good faith, candor, to refrain from self-dealing, integrity of the strictest kind, fair and honest dealing and full. Defendants have breached those duties as stated herein.

**DEFALCATION**

5.7    Plaintiffs incorporate by reference all of the allegations contained in this petition as if fully set forth herein.

5.8    Defalcation occurs when a fiduciary breaches its duty by inadequately accounting for funds held in a fiduciary capacity or by misapplying those funds contrary to an agreement. In this case, Defendants are liable to Plaintiffs for defalcation for its failure to account for the revenues and expenses of the Portfolio.

5.9    As a result of Defendants' defalcation, Plaintiffs have suffered and continue to suffer damages, and Defendants have benefitted. Defendants' defalcation has caused, and will continue to cause, irreparable harm to Plaintiffs.

**BREACH OF CONTRACT**

5.10    Plaintiffs incorporate by reference all of the allegations contained in this petition as if fully set forth herein.

5.11    In this case Anson Financial breached its servicing contract by failing to provide timely payments to the noteholders/interested parties and by failing to provide timely and accurate accountings. As a result, Plaintiffs have suffered and continue to suffer damages. Anson Financial's breach has caused, and will continue to cause, irreparable harm to Plaintiffs. Additionally, Plaintiffs are third-party beneficiaries of any contracts between the Defendants and the Original Plaintiffs.

5.12    The Defendants breached the separation agreement by failing to timely remit payments, by attempting to convert the Plaintiffs' stake in the Portfolio by selling it to the Original Plaintiffs, by failing to provide an adequate accounting, and by withholding information, among other things causing financial damages to Plaintiffs.

Defendants breached Defendants' agreement to make payments related to the back production and ongoing revenues generated through use of the Global Agreement.

**CONVERSION**

5.13    Plaintiffs incorporate by reference all of the allegations contained in this petition as if fully set forth herein.

5.14    To establish a claim for conversion, a plaintiff must prove that: (1) the plaintiff owned or had legal possession of property or entitlement to possession, (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Khorshid, Inc. v. Christian*, 257 S.W.3d 748, 759 (Tex. App. Dallas 2008).

5.15    In this case, Plaintiffs' own a stake in the Portfolio and associated revenues. Defendants exercised dominion and control over the Portfolio and associated revenues inconsistent with the Plaintiff's rights as an owner.  Plaintiffs demanded payment and an accounting, and Defendants refused or failed to provide such. As a result, Plaintiffs have suffered and continue to suffer damages.  Defendants conversion has caused, and will continue to cause, irreparable harm to Plaintiffs.

**FRAUD, FRAUDULENT INDUCEMENT, MISREPRESENTATION, FRAUD BY NONDISCLOSURE**

5.16    Plaintiffs incorporate by reference all of the allegations contained in the foregoing paragraphs as if fully set forth herein.

5.17    Defendants Ferguson and Ferguson, P.C. made representations and omissions to Plaintiffs and third-parties concerning the ownership and accounting of the Portfolio assets.  Based upon those misrepresentations or omissions, Portfolio assets were sold or conveyed and encumbered without Plaintiffs consent, thus, injuring the value of Plaintiffs' interests and depriving Plaintiff of the right to vote on conveyances or encumbrances affecting Plaintiffs'

interests. Defendants also made disclosures regarding Portfolio finances that were misleading or
inaccurate in an attempt to coerce Plaintiffs to sell the Plaintiffs' interest for a fraction of the true
value. Defendants made these representations at a time when they (a) knew the representations
were false or (b) made the representations recklessly, as a positive assertion, and without
knowledge of their truth. Defendants had a duty to speak accurately regarding all accounting for
Portfolio revenues and expenses, together with such offsets and credits as may be appropriate,
reasonable, or warranted, and Defendants failed to do so.

5.18    Defendants made the representations with the intent that Plaintiffs or third-parties
act on them.

5.19    Plaintiffs relied on these representations in entering into the separation agreement,
in hiring Anson Financial to service the notes, and third-parties relied upon these representations
in allowing the Portfolio to be sold or encumbered without Plaintiff's consent.

5.20    As a result, Plaintiffs have suffered and continue to suffer damages. Defendants'
conduct has caused, and will continue to cause, irreparable harm to Plaintiffs.

**NEGLIGENT MISREPRESENTATION**

5.21    Plaintiffs incorporate by reference all of the allegations contained in the foregoing
paragraphs as if fully set forth herein.

5.22    As previously stated, Defendants made representations in the course of Defendant's
business and supplied false information for the guidance of others. Defendants did not exercise
reasonable care or competence in obtaining or communicating that information. Plaintiffs
justifiably relied on Defendants' information, and this reliance proximately caused Plaintiffs'
injuries, for which damages Plaintiffs now sue. Defendants' conduct has caused, and will continue
to cause, irreparable harm to Plaintiffs.

**MONEY HAD AND RECEIVED**

5.23    Plaintiffs incorporate by reference all of the allegations contained in the foregoing paragraphs as if fully set forth herein.

5.24    Anson Financial and potentially the other defendants are holding proceeds from payments made on the Portfolio's notes.  These proceeds in equity and good conscience belong to Plaintiffs.  As a result, Plaintiffs have suffered and continued to suffer damages.  So long as Defendants' continue to collect and hold these proceeds, Defendants' conduct will continue to cause, irreparable harm to Plaintiffs.

**TRESPASS TO TRY TITLE**

5.25    Plaintiffs incorporate by reference all of the allegations contained in this petition as if fully set forth herein.

5.26    To the extent that Defendants dispute title to the Portfolio assets, the Plaintiffs raise a claim for trespass to try title. TEX. PROP. CODE. § 22.001. The Plaintiffs' contracted solely for legal fees, but to any extent that Defendants acquired proprietary interests, Plaintiffs' stake included a percentage of such proprietary interests acquired. Plaintiffs' are, thus, owners or co-owners of the Portfolio property, which consists of notes, deeds of trust, mineral rights, and real estate. The Defendants wrongfully dispossessed Plaintiffs of the property. Plaintiffs have been damaged by the wrongful dispossession. Plaintiffs are owed a determination clearing title to the subject property, given the substantial degree of uncertainty that exists as to the subject property, as against the Defendants, together with possession, management, and control of any of the Plaintiffs' portion of the subject property.

**DECLARATORY JUDGMENT AND EQUITABLE RELIEF REQUESTED, INCLUDING THE IMPOSITION OF A CONTRUCTIVE TRUST AND DECLARATION FROM THE COURT AS TO THE VALUE OF THE CONSTRUCTIVE TRUST**

5.27    Plaintiffs incorporate by reference all of the allegations contained in this petition as if fully set forth herein.

5.28    Pursuant to Texas Civil Practice & Remedies Code section 37.001, a person may seek a declaratory judgment to settle and to afford relief from uncertainty and insecurity with respect to his rights, status, and other legal relations in a controversy. A declaratory judgment is permitted where a person seeks to have determined his rights under a written contract or the construction under such contract and obtain a declaration of rights, status or other legal relations thereunder. Plaintiffs' seek declaratory judgment construing Plaintiffs' rights under the Global Agreement and the separation agreement, together with declaratory judgment construing the ownership of the Portfolio, MBH Real Estate, LLC, and such other and further determinations as may be necessary to clear title to the properties and notes involved in this suit, and the contractual and other rights and obligations between and amongst the parties.

5.29    <u>Ultra Vires Acts and Request for Restoration of Interest</u>. In the Spring of 2016, the Defendants are believed to have entered into an agreement with the Original Plaintiffs involving MBH Real Estate LLC. The Defendants have acknowledged, in writing, the Plaintiffs 13.33% interest in MBH Real Estate LLC, yet the Plaintiffs were not notified of any agreements or transfers affecting such interest. Ian Ghrist is a member of MBH Real Estate LLC. The Defendants have acknowledged Ian Ghrist's interest in MBH Real Estate LLC in writing. Any action taken by the Defendants on behalf of MBH Real Estate LLC that was not expressly authorized by Ian Ghrist or Ghrist Law Firm PLLC was ultra vires, unauthorized, a fraudulent transfer, and void. Plaintiffs are entitled to judgment rescinding, cancelling and setting aside any transfers of title or agreements

between the Original Plaintiffs and the Defendants if those transfers or agreements involved MBH Real Estate LLC assets and if those actions were undertaken without the express consent of member, Ghrist Law Firm PLLC or Ian Ghrist. Additionally, Plaintiffs request entry of judgment restoring title of any property transferred without authorization.

5.30    Constructive Trust. To any extent that Plaintiffs do not have a membership interest in MBH Real Estate LLC or legal title to 13.33% of properties recovered from Cause Numbers 236-269254-13 and 236-248435-10 in the 236th Judicial District Court of Tarrant County, Texas, then Plaintiffs request the imposition of a constructive trust upon MBH Real Estate LLC and all properties recovered from Cause Numbers 236-269254-13 and 236-248435-10 in favor of Plaintiffs. This request for a constructive trust is a real property claim for purposes of the filing of lis pendens. *In re Cohen*, 340 S.W.3d 889, 898 (Tex. App.—Houston [1st Dist.] 2011).

5.31    A constructive trust is an equitable, court-created remedy designed to prevent the type of unjust enrichment that would occur in this case if the Plaintiffs are found to lack legal title to 13.33% of MBH Real Estate LLC and all property recovered under Cause Numbers 236-269254-13 and 236-248435-10 in the 236th Judicial District Court of Tarrant County, Texas. If the Plaintiffs are found to lack legal title, then the Defendants would be unjustly enriched by acquiring property that Defendants agreed, in writing, that the Plaintiffs' would have a 13.33% interest in. Constructive trusts have historically been applied to remedy or ameliorate harm arising from a wide variety of misfeasance. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70 (Tex. 2015); *Meadows v. Biershwale*, 516 S.W.2d 125 (Tex. 1974). Under a constructive trust, a person holding legal title to property has an equitable duty to convey that property to another person when the title holder would be unjustly enriched if allowed to retain the property. *Hatton v. Turner*, 622 S.W.2d 450 (Tex. Civ. App.—Tyler 1981, no writ).

5.32     Three elements are generally required for a constructive trust to be imposed: (1) breach of a special trust or fiduciary relationship or actual or constructive fraud, (2) unjust enrichment of the wrongdoer, and (3) an identifiable res that can be traced back to the original property. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70 (Tex. 2015). A constructive trust may apply to particular, identifiable property in which the plaintiff has an equity. *Wheeler v. Blacklands Production Credit*, 627 S.W.2d 846 (Tex. App.—Fort Worth 1982, no writ). In this case, the Defendants agreed that the Plaintiffs would have a 13.33% interest in MBH Real Estate LLC and all properties recovered from Cause Numbers 236-269254-13 and 236-248435-10 in the 236th Judicial District Court of Tarrant County, Texas. See Exhibit A, attached herein, showing that the Defendants agreed to this in writing.

5.33     The Defendants have been managing the Plaintiffs' property and collecting over $500,000.00 in gross incomes since October of 2014 and yet have not paid anything to the Plaintiffs. Because the Defendants were paid to manage and managed the Plaintiffs' money and property for the Plaintiffs, under an agreement with the Plaintiffs, the Defendants owed a fiduciary duty to the Plaintiffs. The Defendants will be unjustly enriched if the Defendants are able to prevent the Plaintiffs from enjoying the 13.33% agreed-upon interest in MBH Real Estate LLC and the liens, notes, and properties that are the subject of this suit, in that, the Plaintiffs will not receive the benefit-of-their-bargain because the Plaintiffs will lose the ability to control, manage, encumber, pledge, partition, divide, and/or assign the interests that the Plaintiffs bargained for. Plaintiffs can identify the res of the trust as 13.33% of MBH Real Estate LLC and all properties recovered from Cause Numbers 236-269254-13 and 236-248435-10 in the 236th Judicial District Court of Tarrant County, Texas, as per the written agreement of the Defendants, which is attached as Exhibit A herein.

5.34    Plaintiffs also seek judgment establishing Plaintiff's 13.33% interest in both MBH Real Estate LLC and in the properties recovered from Cause Numbers 236-269254-13 and 236-248435-10 in the 236th Judicial District Court of Tarrant County, Texas, as per the written agreement of the Defendants, which is attached as Exhibit A herein.

5.35    <u>Equitable Title</u>. In the alternative, the Plaintiffs seek to establish equitable title, if not legal title, to 13.33% of MBH Real Estate LLC and the properties recovered from Cause Numbers 236-269254-13 and 236-248435-10 in the 236th Judicial District Court of Tarrant County, Texas. Plaintiffs' performed on Plaintiffs' agreement to provide legal and receivership services to acquire property from David Boles and his affiliates or assigns. Plaintiffs' recovered valuable property that the Defendants have collected hundreds of thousands of dollars managing. *Johnson v. Wood*, 138 Tex. 106, 110, 157 S.W.2d 146, 148 (1941) (performance of a contract for conveyance of title grants equitable title upon the performer). In this case, the Plaintiffs performed and are, thus, entitled to equitable title.

**WIND UP PURSUANT TO TEX. BUS. ORGS. CODE § 11.314**

5.35    The foregoing referenced conduct unreasonably frustrates the economic purpose of the partnership, Defendants have engaged in conduct related to the Portfolio that makes it not reasonably practicable to carry on the business, and in conformity with any applicable entity's governing documents, if any, it is not reasonably practicable to carry on the business of the entity or entities involved with the Portfolio. Plaintiffs allege that the wind up request is triggered by acrimony among the partners/members/stakeholders and an inability to agree on who will handle the wind up of affairs and how the affairs are to be wound up, and thus, that a third party should be appointed as per Tex. Bus. Orgs. Code § 152.702(b), *In re Waggoner Estate*, 163 S.W.3d 161,

171 (Tex. App.—Amarillo 2005, no pet.). Plaintiffs request that 13.33% of all properties be transferred from the Defendants to the Plaintiffs.

**DERIVATIVE OR DIRECT CLAIM**

5.36    The Plaintiffs, at the time of the acts or omissions made the basis of this proceeding, was a record or beneficial owner of shares in any applicable Defendant corporations or companies to any extent that the Defendants claim to be or are record owners in the foregoing. The Plaintiffs fairly and adequately represent the interests of the Defendant corporations or companies and the interests of other shareholders similarly situated in enforcing the right of Defendants. Demand for Action was made via email dated May 6th, 2016. The same-day response to the email was to ignore the information or accounting requested, provide other information that was not requested, withhold payment, make vague thinly-veiled threats, and expressly repudiate the parties' agreements.

**PARTITION**

5.37    The Plaintiffs and Defendants are co-owners or stakeholders in the Portfolio or its incomes. The Plaintiffs seek a partition of the Portfolio among the parties in accordance with the parties' respective interests. The Portfolio remains subject to claims by the Original Plaintiffs who still have legal or equitable interests in the Portfolio. Wherefore, Plaintiffs request that Defendants be cited to appear and answer, and that on hearing, the Court enter a decree determining the share of each of the joint owners of or stakeholders in the property described above, determining that such property is susceptible to partition, and directing partition in accordance with the respective shares of the parties, and such other and further relief as to which the Plaintiffs may be justly entitled. Plaintiffs request that 13.33% of all properties and notes be transferred to the Plaintiffs.

**ALTER EGO**

5.38    The Plaintiffs allege that Anson Financial is an alter ego of J. Michael Ferguson and the Defendants are alter egos of each other. Accordingly, they should be treated as such.

**QUANTUM MERUIT, PROMISSORY ESTOPPEL, AND OTHER EQUITABLE CLAIMS**

5.39    Plaintiff pleads in the alternative for quantum meruit related to the Global Agreement and Portfolio. Moreover, the Plaintiffs allege that the actions of the Defendants give rise to a claim of promissory estoppel and incorporate by reference herein all allegations in this petition as if fully set forth herein. Plaintiffs also request such other and further relief, in law or in equity, to which Plaintiffs may be justly entitled.  Plaintiff provided legal services in exchange for the promise of payment.  Defendant accepted those services received the benefit from the services but is not refusing to pay the agreed upon amount.

**WIND UP OF JOINT VENTURE OR PARTNERSHIP**

5.40    Plaintiffs further and in the alternative allege that a limited-purpose partnership or joint venture arose related to the Portfolio and incorporate by reference herein all allegations in this petition as if fully set forth herein.

5.41    Plaintiffs, due to default by Defendants on the written separation agreement and due to the other allegations set forth herein, seek wind up of the joint venture between the Plaintiffs and the Defendants. Accordingly, Plaintiffs ask the Court to appoint a person to wind-up all affairs of the joint venture and to transfer 13.33% of all properties and promissory notes acquired in connection with the joint venture to the Plaintiffs from the Defendants. Plaintiffs seek this relief under Section 152.702(b) of the Tex. Bus. Orgs. Code.

## VI. DEMAND FOR ACCOUNTING

6.1     Plaintiffs incorporate by reference all of the allegations contained in the foregoing paragraphs as if fully set forth herein.

6.2     Plaintiffs demand a full and complete accounting on the entire Portfolio, which Plaintiffs are entitled to as stakeholders in MBH Real Estate, LLC and the Portfolio itself and pursuant to the agreement of the parties. The accounting that has been provided has missing information, the spreadsheets are sporadic, and none of the underlying books and records have been provided.  Accordingly, adequate relief may not be obtained at law, and Plaintiffs request that the Court exercise its equitable power and order Defendants to account for the following:

a.     All transactions in conjunction with the Global Agreement

b.     All transactions in conjunction with MBH Real Estate, LLC and the Portfolio in reasonable bookkeeping format, formatted in such manner as will allow a Certified Public Accountant hired by the Plaintiffs to review and determine amounts due thereunder and to complete a full accounting in accord with reasonable or generally accepted accounting principles. The bookkeeping must be adequate for Federal tax reporting and should be in accord with reasonable bookkeeping practices for businesses that service or own notes secured by deeds of trust.

## VII. ATTORNEY'S FEES

7.1     Plaintiffs incorporate by reference all of the allegations contained in the foregoing paragraphs as if fully set forth herein.

7.2     Because of Defendants' wrongful conduct, Plaintiffs have been required to retain the undersigned counsel to initiate and prosecute this suit.  According to Texas Civil Practice and

Remedies Code chapters 37 and 38 and other applicable law, Plaintiffs' are entitled to their reasonable attorneys' fees and court costs.

## VIII.  PUNTIVE DAMAGES

8.1      Plaintiffs incorporate by reference all of the allegations contained in this petition as if fully set forth herein.  Punitive damages are proper when self-dealing by a fiduciary has occurred. "*Texas Bank and Trust Co. v. Moore*, 595 S.W.2d 502 (Tex. 1980).  Defendants engaged in self-dealing.  Moreover, Defendants' conduct was aggravated by the kind of willfulness, wantonness, and malice for which the law allows the imposition of punitive damages.  Defendants' conduct was intentional, willful and without justification or excuse.

8.2      Plaintiffs seek exemplary or punitive damages against Defendants in an amount commensurate with:  a) the nature of the wrong committed; b) the character of the conduct involved; c) the degree of culpability of each Defendant; d) the situation and sensibilities of the parties concerned; e) the extent to which conduct, such as Defendants, offends a public sense of justice and propriety; f) the net worth of Defendants.   The conduct of Defendants alleged hereinabove justifies an award of exemplary or punitive damages in an amount sufficient to deter Defendants and other individuals and attorneys similarly situated from engaging in this conduct in the future.  Plaintiffs further request that past sanctions, fines, reprimands and settlements entered into, if any, for similar conduct related to the servicing of mortgage accounts or breaches of fiduciary duty be considered in determining the appropriate amount of damages.

## IX.    CONDITIONS PRECEDENT

9.1      All conditions precedent to Plaintiff's claims for relief have been performed or have occurred, as required by Texas Rule of Civil Procedure 54.

## IX. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request the following relief:

Plaintiffs further request that, upon trial, the Court:

    a.    Enter a judgment against Defendants for the declaratory and/or other relief as sought herein;

    b.    Award Plaintiffs all actual, foreseeable, and incidental damages, in an amount that the Plaintiffs cannot determine until the Accounting prayed for in this petition is completed, but is anticipated to be within the jurisdictional limits of the Court;

    c.    Award Plaintiffs all reasonable and necessary attorney's fees in prosecuting Plaintiffs claims through trial, and if necessary, through appeal;

    d.    Award Plaintiffs prejudgment interest as provided by law;

    e.    Award Plaintiffs post-judgment interest as provided by law;

    f.    Award Plaintiffs exemplary damages;

    g.    Award Plaintiffs their costs of suit, and

    h.    Award such other and further relief, at law or in equity, to which the Plaintiffs may show themselves to be justly entitled.

Respectfully submitted,

**LAW FIRM OF CALEB MOORE, PLLC**
2205 Martin Drive, Suite 200
Bedford, TX 76021
Telephone: (817) 953-2420
Facsimile:   (817) 581-2540
cmoore@thedfwlawfirm.com
Caleb I. Moore
Texas Bar No. 24067779

Ghrist Law Firm, PLLC

By: _____/s/ Ian Ghrist_____
SBOT No. 24073449
2735 Villa Creek Drive, Suite 250A
Farmers Branch, Texas 75234
Phone (817) 778-4136
Fax (817) 900-2863
ian@ghristlaw.com
Attorney for Plaintiffs

## **VERIFICATION**

THE STATE OF TEXAS §
§
COUNTY OF TARRANT §

    BEFORE ME, the undersigned authority, on this day personally appeared Ian Ghrist, who, being duly sworn, upon his oath stated and deposed as follows:

    I am Ian Ghrist, individual plaintiff and Managing Member of Ghrist Law Firm, PLLC. I have read and reviewed the allegations of fact set forth in the foregoing, and I state that the factual statements contained within are within my personal knowledge or are based on information given to me by persons with personal knowledge and are true and correct.

_____
IAN GHRIST

    SUBSCRIBED AND SWORN TO BEFORE ME this _____14th___day of March, 2017, to certify which witness my hand and official seal.

DAISY LORENA REYES
MY COMMISSION EXPIRES
AUGUST 14, 2019

_____
Notary Public – State of Texas

Page 23 of 24

**Certificate of Service**

I hereby certify that on this the 14th day of March, 2017, a true and correct copy of the foregoing was sent to Third-Party Defendants and Sullivan & Cook, LLC, Jeffrey Cook, M. Jason Ankele, 600 E Las Colinas Blvd., Suite 1300, Irving, Texas 75039, (214-520-7494, Fax 241-528-6925, Attorneys for Defendants J. Michael Ferguson PC, J. Michael Ferguson, Anson Financial, Inc. and MBH Real Estate, LLC via electronic service.

__/s/ Ian Ghrist_____
Ian Ghrist
